UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 2 2 2012

Clerk. U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o United States Attorney's Office<br>555 Fourth St., N.W.,<br>Washington, DC 20530, | )<br>)<br>) |
| Plaintiff, | Case: 1:12-cv-00489<br>Assigned To : Walton, Reggie B.<br>Assign. Date : 3/22/2012<br>Description: General Civil |
| v. | ) **(UNDER SEAL)** |
| ALL FUNDS IN INDUSTRIAL AND<br>COMMERCIAL BANK OF CHINA<br>LIMITED Interbank Accounts In The United<br>States In An Amount Up To And Including<br>The Amount Of $718,943.68, Which Is<br>Equivalent To The Value Of Proceeds Now<br>On Deposit In Account Number<br>XXXXXXXXXXXXXXX7-028, Held At<br>Industrial And Commercial Bank Of China<br>Limited, Fujian Provincial Branch, Or Any<br>Property Traceable Thereto, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| ALL FUNDS IN BANK OF CHINA LIMITED<br>Interbank Accounts In The United States In<br>An Amount Up To And Including The Amount<br>Of $107,940.23, Which Is Equivalent To The<br>Value Of Proceeds Now On Deposit In Account<br>Number XXXXXXXXXXXXXXX7-338, Held<br>At Bank Of China, Fujian Branch, Or Any<br>Property Traceable Thereto, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**VERIFIED COMPLAINT FOR FORFEITURE _IN REM_**

*COMES NOW*, plaintiff United States of America, by and through the United States

Attorney for the District of Columbia and the Department of Justice, Asset Forfeiture and Money

Laundering Section and Computer Crime and Intellectual Property Section, pursuant to Title 18,

United States Code, Sections 2323(a)(1)(C) and 981(k), to bring this verified complaint for forfeiture in a civil action *in rem* against funds in Industrial and Commercial Bank of China Limited's interbank accounts in the United States at covered financial institutions in an amount up to and including $718,943.68 now on deposit in Industrial and Commercial Bank of China Limited, Fujian Provincial Branch, account number XXXXXXXXXXXXXXXX7-028; and funds in Bank of China Limited interbank accounts in the United States at covered financial institutions in an amount up to and including $107,940.23 now on deposit in Bank of China Limited, Fujian Branch, account number XXXXXXXXXXXXXXXX7-338.

Industrial and Commercial Bank of China Limited has interbank accounts in the United States at covered financial institutions at the New York branches of Industrial and Commercial Bank of China Limited, Bank of China Limited, Bank of America NA, Citibank NA, Deutsche Bank Trust Company Americas, HSBC Bank USA NA, JPMorgan Chase Bank National Association, Standard Chartered Bank, The Bank of New York Mellon, The Royal Bank of Scotland NV, and Wells Fargo Bank NA, and this Verified Complaint For Forfeiture *In Rem* asks the Court to issue a warrant of arrest *in rem* for the funds on deposit in these interbank accounts until the arrested funds are equal in value to the amount of all funds now on deposit in Industrial and Commercial Bank of China Limited, Fujian Provincial Branch, account number XXXXXXXXXXXXXXXX7-028 up to the amount of $718,943.68.

Bank of China Limited has interbank accounts in the United States at covered financial institutions at the New York branches of Bank of China Limited, Bank of America NA, Citibank NA, Deutsche Bank Trust Company Americas, and JPMorgan Chase Bank National Association, and this Verified Complaint For Forfeiture *In Rem* asks the Court to issue a warrant of arrest *in rem*

for the funds on deposit in these bank accounts until the arrested funds are equal in value to the amount of all funds now on deposit in Bank of China Limited, Fujian Branch, account number XXXXXXXXXXXXXXX7-338 up to the amount of $107,940.23. Industrial and Commercial Bank of China Limited, Fujian Provincial Branch, and Bank of China Limited, Fujian Branch, are foreign financial institutions in the People's Republic of China. In support of this cause, plaintiff states as follows:

## NATURE OF ACTION AND DEFENDANT *IN REM* AND SUMMARY OF CLAIM

1.      This is a civil action *in rem* brought against the defendant property to forfeit it to the United States, as authorized by 18 U.S.C. §§ 2323(a)(1)(C) and 981(k). The defendant property in this complaint for forfeiture is all funds in Industrial and Commercial Bank of China Limited interbank accounts in the United States at the New York branches of Industrial and Commercial Bank of China Limited, Bank of China Limited, Bank of America NA, Citibank NA, Deutsche Bank Trust Company Americas, HSBC Bank USA NA, JPMorgan Chase Bank National Association, Standard Chartered Bank, The Bank of New York Mellon, The Royal Bank of Scotland NV, and Wells Fargo Bank NA, in an amount up to and including the amount of $718,943.68, which is equivalent to the value of proceeds now on deposit in Industrial and Commercial Bank of China Limited, Fujian Provincial Branch, account number XXXXXXXXXXXXXXX7-028, or any property traceable thereto; and all funds in Bank of China Limited interbank accounts in the United States at the New York branches of Bank of China Limited, Bank of America NA, Citibank NA, Deutsche Bank Trust Company Americas, and JPMorgan Chase Bank National Association, in an amount up to and including $107,940.23, which is equivalent to the value of proceeds now on deposit in Bank of China Limited, Fujian Branch, account number XXXXXXXXXXXXXXX7-338,

or any property traceable thereto.

In summary, this complaint alleges the following: From May 17, 2010, to November 11, 2011, PayPal account number XXXXXXXXXXXXXXXX7276 was used to process the proceeds of the sales of counterfeit professional and collegiate sports team jerseys on the Internet. In furtherance of this scheme, individuals who ordered counterfeit professional and collegiate sports jerseys from certain websites were directed to pay for their purchases using PayPal account number XXXXXXXXXXXXXXXX7276, which listed the primary contact address as jasonwholesale@gmail.com. Between June 8, 2010, and August 1, 2011, $718,943.68 in proceeds of the sales of counterfeit goods shipped to the United States and paid into PayPal account number XXXXXXXXXXXXXXXX7276 were transferred to a bank account held at a foreign financial institution in the People's Republic of China: Industrial and Commercial Bank of China Limited, Fujian Provincial Branch, account number XXXXXXXXXXXXXXXX7-028. Similarly, between August 31, 2011, and November 3, 2011, $107,940.23 in proceeds of the sales of counterfeit goods shipped to the United States and paid into PayPal account number XXXXXXXXXXXXXXXX7276 were transferred to a bank account held at a second foreign financial institution in the People's Republic of China: Bank of China Limited, Fujian Branch, account number XXXXXXXXXXXXXXXX7-338. In sum, a total amount of $826,883.91 transferred to the two Chinese bank accounts is traceable to the net profit from the sales of counterfeit professional and collegiate sports jerseys paid into PayPal account number XXXXXXXXXXXXXXXX7276 and shipped to addresses in the United States, including addresses in the District of Columbia.

2.     Pursuant to 18 U.S.C. § 2323(a)(1)(C), property is forfeitable to the United States when it constitutes or is derived from "any proceeds obtained directly or indirectly as a result of"

trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320.

## JURISDICTION AND VENUE

3.　　This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345 because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress.

4.　　Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because this is a civil forfeiture action brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred.

5.　　This civil action *in rem* for forfeiture is governed by 18 U.S.C. §§ 981, 983, 2320, and 2323, the Federal Rules Of Civil Procedure, and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## THE DEFENDANTS *IN REM*

6.　　The defendant properties named in the Verified Complaint for Forfeiture *In Rem* are more fully described as:

**All Funds In Industrial And Commercial Bank Of China Limited Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $718,943.68, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXXX7-028, Held At Industrial And Commercial Bank Of China Limited, Fujian Provincial Branch, Or Any Property Traceable Thereto; and**

**All Funds In Bank Of China Limited Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $107,940.23, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXX7-338, Held At Bank Of China Limited, Fujian Branch, Or Any Property Traceable Thereto.**

7.　　Title 18, United States Code, Section 981(k) **Interbank accounts**, states:

[981(k)(1)(A)] **In general.** – For the purpose of a forfeiture under this section . . . , if funds are deposited into an account at a foreign financial institution (as defined in section 984(c)(2)(A) of this title) and that foreign financial institution (as defined in section 984(c)(2)(A) of this title) has an interbank account in the United States with a covered financial institution (as defined in section 5318(j)(1) of title 31) the funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant *in rem* regarding the funds may be served on the covered financial institution, and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution.

. . .

[981(k)(2)] **No requirement for Government to trace funds.** – If a forfeiture action is brought against funds that are restrained, seized, or arrested under paragraph (1), it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution (as defined in section 984(c)(2)(A) of this title), nor shall it be necessary for the Government to rely on application of section 984.

8.      Industrial and Commercial Bank of China Limited, Fujian Provincial Branch, and Bank of China Limited, Fujian Branch, are "covered financial institution[s]" for purposes of Title 18, United States Code, Section 981(k).

9.      Industrial and Commercial Bank of China Limited maintains interbank accounts, *inter alia*, at Industrial and Commercial Bank of China Limited, New York Branch, Bank of America NA, Citibank NA, and JPMorgan Chase National Association.   Bank of China Limited maintains interbank accounts, *inter alia*, at Bank of China Limited, New York Branch, Bank of America NA, Citibank NA, and JPMorgan Chase National Association.

## BACKGROUND

### Internet-Related Definitions

10.      A "domain name" or "Internet domain name" describes an addressing construct used to identify and locate computers on the Internet.   Domain names provide a system of Internet

-6-

addresses that can be translated into the numeric addresses (Internet protocol ("IP") numbers) used by the Internet.

11.     A "domain name server" ("DNS server") is a computer connected to the Internet that converts, or resolves, domain names into IP addresses.  For each top-level domain (such as ".gov"), there is a single company, called a "registry," that determines which second-level domain (such as justice.gov) resolves to which IP address.

12.     An "IP address" is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0–255, separated by periods (*e.g.*, 12.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.

13.     The assignment of IP addresses to computers connected to the Internet is controlled by Internet Service Providers ("ISP").

14.     A "registrar," among other things, processes registrations for domain names and sends the necessary DNS server information for each registered domain name to a registry for entry into a centralized registry database.

15.     A "registrant" is the individual or organization that registers a specific domain name with the registrar.  The registrant is the legal entity that holds the right to use that specific domain name for a determined time period within the parameters of a domain name registration agreement entered into by the registrant and the registrar.

16.     A "host" is a computer that has both the software and the data to resolve a domain name to an IP address.  An entity that hosts a website associated with a domain name provides the

equipment and services required to host and maintain files for a website and to provide rapid Internet connections to that website. Most hosting is "shared," which means that multiple websites of unrelated registrants are on the same server in order to reduce associated costs.

17.     A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Markup Language ("HTML") and is transmitted from the web servers to various web users via Hyper-Text Transport Protocol ("HTTP").

## Unlawful Sale of Counterfeit Goods

18.     A trademark is a brand name and includes any word, name, symbol, device, or any combination, used or intended to be used, in commerce to identify and distinguish the goods of one manufacturer or seller from goods manufactured or sold by others and indicates the source of the goods. Trademarks are registered with the United States Patent and Trademark Office ("USPTO").

19.     Under Title 18, United States Code, Section 2320(e), a "counterfeit" trademark is a spurious or unauthorized mark that is used in connection with trafficking goods, that is identical or substantially similar to a mark registered with the USPTO for use on the type of goods being trafficked, and that is likely to cause confusion or mistake.

20.     Title 18, United States Code, Section 2320(a) provides:

Whoever; intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, or intentionally traffics or attempts to traffic in labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000.

## STATEMENT OF FACTS

21.     PayPal is an Internet money transfer business that enables users to establish an account, similar to a bank account. PayPal permits money payments to be made, received, and stored in a user's account via the Internet. In this way, among other things, PayPal permits users who have a PayPal account to receive payments into the user's account (for example, for purchases made from the users) via the Internet. A user receiving payments into his PayPal account may then direct PayPal to disburse the funds from the user's account in one of several ways, including in the form of a check from PayPal, a transfer of funds to a PayPal deposit account, or a wire of funds to a user-designated bank account.

22.     PayPal account number XXXXXXXXXXXXXXXX7276 was opened on or about January 5, 2010.

23.     The registration information for PayPal account number XXXXXXXXXXXXXXXX7276 lists jasonwholesale@gmail.com as the primary contact email address for the account. PayPal account XXXXXXXXXXXXXXXX7276 hereinafter will be referred to as the "jasonwholesale@gmail.com PayPal account."

24.     The account registration information for the jasonwholesale@gmail.com PayPal account lists the following additional email addresses associated with the account: jerseysfactory10@gmail.com, jerseyboys001@gmail.com, canada.jerseys.lucy@gmail.com, americajersey2010@gmail.com, and adasmith0908@gmail.com. In other words, payments made using PayPal to the foregoing email addresses ultimately credit the same PayPal account, account number XXXXXXXXXXXXXXXX7276, as payments made on PayPal to

jasonwholesale@gmail.com.

25.     The first transaction recorded in the jasonwholesale@gmail.com PayPal account took place on or about May 17, 2010.

26.     On or about November 10, 2011, PayPal placed the jasonwholesale@gmail.com PayPal account on restricted status, freezing the funds for 180 days, because a customer filed a complaint after receiving a jersey that was alleged to be counterfeit.

27.     As of November 11, 2011, the jasonwholesale@gmail.com PayPal account held $36,052.29.

### The Sale of Counterfeit Sports Jerseys on the Website www.amoyhy.com Paid to the jasonwholesale@gmail.com PayPal Account

28.     Professional and collegiate sports leagues in the United States and Canada, including but not limited to the National Football League ("NFL"), Major League Baseball ("MLB"), the National Basketball Association ("NBA"), and the National Hockey League ("NHL"), and individual teams within these leagues, hold registered trademarks that appear on their respective sports teams' jerseys, other team apparel, and the hangtags and packaging affixed to their authorized merchandise.

29.     The professional sports leagues and the Collegiate Licensing Company ("CLC") authorize vendors to distribute authorized jerseys on behalf of the MLB, NFL, NBA, NHL, and the CLC.

30.     In or about 2010, the National Intellectual Property Rights Coordination Center ("IPR") received a request for an investigation of individuals associated with the operation of the domain name www.amoyhy.com because the Coalition to Advance the Protection of Sports Logos ("CAPS") had received complaints that the domain name was being used to facilitate the sale of counterfeit consumer goods, namely, professional and collegiate sports team apparel bearing

counterfeit trademarks.

31.     As part of that investigation, in or about October and November 2010, special agents ("SAs") accessed the www.amoyhy.com website and followed the directions to place an order for what appeared to be trademarked sports team apparel.

32.     Shortly thereafter, the SAs received from the individuals operating www.amoyhy.com packages containing the ordered jerseys.

33.     On three separate occasions, the SAs placed orders and received jerseys in this manner.

34.     All of the jerseys received were determined to be counterfeit sports team apparel.

35.     In the course of placing two of the three under-cover orders through the website www.amoyhy.com in or about October and November 2010, the SAs were directed to pay for their purchases using a PayPal account in the name of jasonwholesale@gmail.com. The emails directing the SAs to the jasonwholesale@gmail.com PayPal account were sent from the email address amoyhy@188.com and referenced Huaye International Trade Co., Ltd.

36.     On or about November 24, 2010, in coordination with the IPR Center, the New York office of Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), seized the domain name www.amoyhy.com based on a seizure warrant issued by the United States District Court for the Southern District of New York.

37.     The SAs who placed the under-cover orders of sports jerseys from www.amoyhy.com have received and continue to receive email advertisements for sports jerseys that purport to be from professional and collegiate sports teams from the email address amoyhy@188.com. The emailed advertisements include attached "stock lists" of the sports jerseys of various trademark holders, such

as the NFL, MLB, NBA, and the NHL.

**The Sale of Counterfeit Sports Jerseys on the Website www.huayetrade.com
Paid to the jasonwholesale@gmail.com PayPal Account**

38.     Soon after HSI New York seized the domain name www.amoyhy.com, HSI agents

discovered that the website was operating under another domain name, www.huayetrade.com.  In

other words, it was the same website as the one seized on November 24, 2010; only the domain

name had changed.

39.     The website www.huayetrade.com sells (and has sold) only sports jerseys that purport

to be from various professional and collegiate sports leagues in the United States and Canada,

including but not limited to the MLB, NFL, NBA, and the NHL.

40.     The website www.huayetrade.com is not an authorized distributor of genuine jerseys

on behalf of the MLB, NFL, NBA, NHL, or CLC.

41.     The domain name www.huayetrade.com was established on or about July 28, 2010.

42.     The registrant of the domain name www.huayetrade.com is China Trade Lin,

2Xiamen, Fu Jian, China 361100.

43.     The registrar of the domain name www.huayetrade.com is Guangzhou Ming Yang

Information Technology Co., Ltd., 6th floor Western Building No. 138 Zhongshan Avenue, Tianhe,

Guangzhou 510630, China.

44.     The domain name www.huayetrade.com is hosted on a computer assigned IP address

98.126.73.196, which is owned by a hosting company, VPLS Inc. d/b/a Krypt Technologies, located

at 1744 W. Katella Ave., Suite 200, Orange, CA 92867.

45.     The IPR Center conducted an under-cover operation to determine whether the website

www.huayetrade.com was illegally selling counterfeit products.

46.     On June 13, 2011, an SA accessed the www.huayetrade.com website and followed the directions to place an order for an NBA New York Knicks (#1 Stoudemire) jersey and an MLB Philadelphia Phillies (#33 Lee) jersey. The SA added these items to his cart and proceeded to checkout. The web page displayed the shopping cart that contained the items that the SA had selected and the corresponding prices for each item. The SA continued through the checkout process by inputting all of the billing and shipping details, including an email address that he had established earlier. Upon completion, the SA received an order number of HY2099.

47.     On June 13, 2011, the SA received an email from amoyhy@188.com titled "PayPal Invoice HY2099," verifying the purchase.

48.     The verifying email followed the same format as the emails received by the SAs who had made under-cover purchases from www.amoyhy.com. In particular, the email was from the same email address, referenced Huaye International Trade Co., Ltd., and was signed by "Lin."

49.     The verifying email directed the SA to pay for his purchase using a PayPal account in the name of jasonwholesale@gmail.com. The email listed the cost of the two jerseys at a discounted price of $62.00.

50.     On June 23, 2011, the SA made payment for $62.00 to the jasonwholesale@gmail.com PayPal account. On the same date, the SA received a confirmation from PayPal that the payment had been made.

51.     On June 23, 2011, the SA received an email from amoyhy@188.com acknowledging receipt of payment.

52.     On July 5, 2011, the SA retrieved the packages from the under-cover post office box

in the District of Columbia, which contained the jerseys ordered from www.huayetrade.com on June 13, 2011.

53.     On August 31, 2011, the same SA placed another order with the www.huayetrade.com website. This time, the SA placed an order for an MLB Baltimore Orioles (#34 Arrieta) jersey and an NFL Chicago Bears (#90 Peppers) jersey. The SA followed the same procedure as he had on June 13, 2011, when purchasing these two jerseys. Upon completion, the SA received an order number of HY2145.

54.     On September 6, 2011, the SA made payment of $91.98 to the jasonwholesale@gmail.com PayPal account. On the same date, the SA received a confirmation from PayPal that the payment had been made.

55.     On September 6, 2011, the SA received an email from amoyhy@188.com acknowledging receipt of payment for the HY2145 order. On September 7, 2011, the SA received another email from amoyhy@188.com, which provided a tracking number for the order.

56.     On September 15, 2011, the SA retrieved a package from the under-cover post office box in the District of Columbia, which contained the jerseys ordered from www.huayetrade.com on August 31, 2011.

57.     On or about September 26, 2011, a CAPS brand protection representative examined detailed digital photos of the four jerseys received from www.huayetrade.com with the purported registered trademarks from the New York Knicks (an NBA team), the Philadelphia Phillies (an MLB team), the Chicago Bears (an NFL team), and the Baltimore Orioles (an MLB team). The representative was trained and employed by Trademark Management, a company certified by numerous trademark holders, including the NBA and MLB, to identify counterfeit merchandise.

58.     The representative informed HSI agents that the four sports jerseys received from www.huayetrade.com and paid for using the jasonwholesale@gmail.com PayPal account were counterfeit and were not manufactured by the rights holders or their designee.

59.     On October 20, 2011, the same SA placed a third order on the www.huyayetrade.com website. This time, the SA placed an order for an NFL Tennessee Titans (#18 Britt) jersey. The SA followed the same procedure as he had on June 13, 2011, and August 31, 2011, when purchasing the jersey.

60.     On October 20, 2011, the SA received an email from amoyhy@188.com, titled "Unfinished Jersey order HY2179," verifying the purchase and directing the SA to pay for the purchase using a PayPal account in the name of jasonwholsesale@gmail.com. The email referenced Huaye International Trade Co., Ltd. and was signed by "Lin."

61.     On October 21, 2011, the SA sent an email to "Lin" at amoyhy@188.com cancelling the order.

62.     On the same day, October 21, 2011, the SA received an email from amoyhy@188.com acknowledging cancellation of the order. The email from amoyhy@188.com referenced Huaye International Trade Co., Ltd. and was signed by "Lin."

63.     The SA who placed the under-cover orders of sports jerseys from www.huayetrade.com has received and continues to receive email advertisements for jerseys that purport to be from professional and collegiate sports teams from the email address amoyhy@188.com. The emailed advertisements include attached "stock lists" of the sports jerseys of various trademark holders, such as the NFL, MLB, NBA, and the NHL.

## Use of the jasonwholesale@gmail.com Gmail Email
## Account to Sell Counterfeit Sports Jerseys

64.     The Gmail email account of jasonwholesale@gmail.com is associated with Jason
International Trade Co., Ltd., which represents itself as a manufacturer of sports jerseys.

65.     The website www.ni-oki.com purports to be operated by Jason International Trade
Co., Ltd.

66.     The website www.ni-oki.com displays numerous pictures of various sports wear and
athletic clothing.  The www.ni-oki.com website does not display any sports jerseys.

67.     Although it displays such non-trademarked products, the website www.ni-oki.com
does not itself provide any option, portal, link, or other means by which to place an order for any
such products on the website itself.

68.     Although the website www.ni-oki.com does not itself display photos of sports jerseys
for sale, the website nonetheless has a disclaimer stating that "if jerseys get lost by unexpected
reasons like customs..we also ship again swfitly [sic]."  An identical disclaimer appears on the
www.huayetrade.com website, including the same misspelling.

69.     The largest category of messages received by the Gmail email account of
jasonwholesale@gmail.com was of automatically generated email messages from PayPal confirming
payments received to the jasonwholesale@gmail.com PayPal account.

70.     The jasonowholesale@gmail.com email account was also used to send emails
advertising sports jerseys that purport to be from professional and collegiate sports teams to various
third-party email accounts.  These emails included attached "stock lists" of the sports jerseys of
various trademark holders, such as the NFL, MLB, NBA, and the NHL.

71.     Upon information and belief, there are no email messages in the jasonwholesale@gmail.com email account that contain any discussion of other business activity, goods sold, services provided, or any other communications regarding the substances or origins of the payments to the jasonwholesale@gmail.com PayPal account.

**The Sale of Counterfeit Sports Jerseys on the Website www.jerseys-factory.com**
**Paid to the jasonwholesale@gmail.com PayPal Account**

72.     The domain name www.jerseys-factory.com was established on or about January 21, 2010.

73.     The website www.jerseys-factory.com advertises "Cheap Jerseys From China" and displays for sale numerous sports apparel that purports to be from various trademark holders, including NFL, NHL, NBA, and MLB teams.

74.     The website www.jerseys-factory.com is not an authorized distributor of genuine jerseys on behalf of the MLB, NFL, NBA, NHL, or CLC.

75.     The website www.jerseys-factory.com is related to the websites www.amoyhy.com and www.huayetrade.com.

76.     The registrant of the domain name www.jerseys-factory.com is Huaye Trade Co., Ltd. and provides the name Lin Jianshan.  The administrative, technical, and billing contacts of www.jerseys-factory.com all listed the email address amoyhy@qq.com.  Similarly, under-cover purchases from the domain names www.amoyhy.com and www.huayetrade.com were confirmed via emails from amoyhy@188.com that were (a) signed by "Lin" and (b) referenced Huaye International Trade Co., Ltd.

77.     The registrar of the domain name www.jerseys-factory.com is Guangzhou Ming Yang Information Technology Co., Ltd., 6th floor Western Building No. 138 Zhongshan Avenue, Tianhe,

Guangzhou 510630, China, which is the same as the registrar for the domain name www.huayetrade.com.

78.     The domain name www.jerseys-factory.com is hosted by VPLS Inc. d/b/a Krypt Technologies, located at 1744 W. Katella Ave., Suite 200, Orange, CA 92867, which is the same company that hosts the domain name www.huayetrade.com.

79.     On the www.jerseys-factory.com web page containing contact information for www.jerseys-factory.com, the company lists the following email addresses: jerseysfactory10@gmail.com, jerseysfactory@188.com, jerseysfactory10@yahoo.com, jerseysfactory10@hotmail.com, and huaye03@aol.com.

80.     Payments made on PayPal to jerseysfactory10@gmail.com are credited to the jasonwholesale@gmail.com PayPal account, account number XXXXXXXXXXXXXXXX7276.

81.     Thirty-six payments to the jasonwholesale@gmail.com PayPal account were made using the jerseysfactory10@gmail.com email address.

82.     PayPal permits, but does not require, users who are making payments into a PayPal account to input information regarding the payment in various optional fields, such as the "Note" or "Subject" fields. The optional "Subject" field has a default setting of "You've got money!"

83.     For example, in the optional "Note" field of a payment associated with the jerseysfactory10@gmail.com address credited to the jasonwholesale@gmail.com PayPal account on June 12, 2010, the purchaser input the following text: "From John [last name omitted] for jersey order. Thank you Catherine."

84.     For example, in the optional "Note" field of a payment associated with the jerseysfactory10@gmail.com address credited to the jasonwholesale@gmail.com PayPal account on

July 24, 2010, the purchaser input the following text: "89204 Atlanta Falcons #2 Matt Ryan Black Jersey 50/L1 89941 Buffalo Bills #51 Paul Posluszny White Jersey(TEAM 50th Anniversary) 52/XL 1 91586 Reebok NFL Jersey Buffalo Bills 21# Spiller White Jersey 52/XL1 Robert McGraw 430 Hebner st [*sic*]."

85.     For example, in the optional "Note" field of a payment associated with the jerseysfactory10@gmail.com address credited to the jasonwholesale@gmail.com PayPal account on August 13, 2010, the purchaser input the following text: ". . . Reebok New York Jets Kids NFL Jerseys #6 Mark Sanchez Green Color Cheap Youth Football Jersey . . . ."

86.     Virtually    none    of    the    remaining    transactions    associated    with jerseysfactory10@gmail.com that were credited to the jasonwholesale@gmail.com PayPal account provided any indication in the optional "Subject" or "Note" field as to the substance of the transaction or reason for the payment (other than PayPal's default setting of "You've got money!").

87.     There were no instances in which the information entered into the optional "Subject" or "Note" field indicated that the substance or reason for the transaction was inconsistent with the purchase of counterfeit jerseys.

**Use of the jasonwholesale@gmail.com PayPal Account
to Process the Proceeds of Counterfeit Jersey Sales**

88.     Upon information and belief, the jasonwholesale@gmail.com PayPal account was used for the exclusive purpose of processing the proceeds of counterfeit jersey sales.

89.     The jasonwholesale@gmail.com PayPal account was active between on or about May 17, 2010, and on or about November 11, 2011.

90.     In that time period, a total of 5,174 completed payments were made to the account. Of those payments, 4,145 list shipping addresses in the United States, including shipping addresses in the District of Columbia.

91.     Of the 5,174 completed payments, 4,647, or 89.81%, are associated with the jasonwholesale@gmail.com email address while the remainder are associated with the other email addresses as follows: jerseysfactory10@gmail.com (36 transactions); jerseyboys001@gmail.com (110 transactions); canada.jerseys.lucy@gmail.com (287 transactions); americajersey2010@gmail.com (38 transactions); and adasmith0908@gmail.com (56 transactions).

92.     Of the total of 5,174 completed payments, approximately 988 payments (i) used the term "jersey" or "jerseys" or otherwise referred to a professional sports team or athlete in the optional "Subject" or "Note" field for the transaction; and/or (ii) referred to the term "jersey" or "jerseys" in the email address of the individual PayPal user making a payment to the account; and/or (iii) the individual PayPal user made a payment to the account through an email address associated with the account that referred to the  term "jersey" or "jerseys" in its email address. Thus, 19.09% of the total transactions in the account had some description referring to the purchase of sports jerseys.

93.     Similarly, of the 4,145 transactions listing a United States shipping address, 19.30% referenced "jersey" or "jerseys" or a professional sports team or athlete in at least one of the three categories listed above in paragraph 92.

94.     Virtually none of the remaining 80.91% of the transactions provided any indication in the optional "Subject" or "Note" field as to the substance of the transaction or reason for the payment (other than PayPal's default setting of "You've got money!").

95.     There were no instances in which the optional "Subject" or "Note" field indicated that the substance or reason for the transaction was inconsistent with the purchase of counterfeit jerseys.

96.     Upon information and belief, the absence of descriptive information in these optional fields is at the request of the seller or sellers of counterfeit jerseys who are receiving payments into the jasonwholesale@gmail.com PayPal account.

97.     The emails from amoyhy@188.com that the SAs received verifying their under-cover purchases instructed the SAs not to input any information, other than an email address, in the optional "Subject" or "Note" fields when making payments via the jasonwholesale@gmail.com PayPal account.  The email from amoyhy@188.com confirming the June 13, 2011 under-cover purchase provided the following instruction: "If you want to leave anything while payment, just leave your email, thanks [*sic*]!"  In the emails from amoyhy@188.com verifying the SAs' October and November 2010 purchases (from www.amoyhy.com) and aborted October 2011 purchase (from www.huayetrade.com), the instruction was: "By the way,when you pay by paypal,pls don't write your order in the paypal but your email address [*sic*]" (including the same typographical errors and misspelling).

98.     The 5,174 completed payments made to the jasonwholesale@gmail.com PayPal account between May 17, 2010, and November 11, 2011 totaled $1,050,556.14.

99.     Upon information and belief, the $1,050,556.14 in funds paid into the jasonwholesale@gmail.com PayPal account is the gross proceeds of the sale of counterfeit jerseys processed through the jasonwholesale@gmail.com PayPal account.

100.     The 4,145 completed payments made by purchasers listing a United States shipping address totaled $845,289.86 after subtracting PayPal's fees.

101.   Upon information and belief, the $845,289.86 in funds paid into the jasonwholesale@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the jasonwholesale@gmail.com PayPal account and shipped to addresses in the United States.

### Transfer of Proceeds from the jasonwholesale@gmail.com PayPal Account to Financial Institutions in China

102.   Between on or about June 8, 2010, and on or about November 3, 2011, there were 102 completed outgoing wire transfers  from the jasonwholesale@gmail.com PayPal account in a total amount of $1,034,849.00.

103.   Upon information and belief, the $1,034,849.00 in funds wired from the jasonwholesale@gmail.com PayPal account constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit jerseys.

104.   Between on or about June 8, 2010, and on or about August 1, 2011, eighty-eight wire transfers totaling $894,191.00 were sent to account number XXXXXXXXXXXXXXXX7-028 at Industrial and Commercial Bank of China Limited, Fujian Provincial Branch.

105.   Upon information and belief, of the $894,191.00 wired to and on deposit with Industrial and Commercial Bank of China Limited, Fujian Provincial Bank, account number XXXXXXXXXXXXXXXX7-028, $718,943.68 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit jerseys sent to United States shipping addresses, including to addresses in the District of Columbia.

106.   Between on or about August 31, 2011, and on or about November 3, 2011, fourteen wire transfers totaling $140,658.00 were sent to account number XXXXXXXXXXXXXXXX7-338 at Bank of China Limited, Fujian Branch.

107.     Upon information and belief, of the $140,658.00 wired to and on deposit with Bank of China Limited, Fujian Branch, account number XXXXXXXXXXXXXXXX7-338, $107,940.23 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit jerseys sent to United States shipping addresses, including to addresses in the District of Columbia.

108.     Industrial and Commercial Bank of China Limited maintains an interbank or other correspondent account, account number 114000101013, at the New York branch of Industrial and Commercial Bank of China Limited, which is located at 725 Fifth Avenue, 20th Floor, New York, NY 10022.  Industrial and Commercial Bank of China Limited also maintains interbank accounts at the New York branches of Bank of China Limited (account number 01000112), Bank of America NA (account number 6550790149), Citibank NA (account number 36073439), Deutsche Bank Trust Company Americas (account number 04092328), HSBC Bank USA NA (account number 142280), JPMorgan Chase Bank National Association (account number 11383395), Standard Chartered Bank (account number 3582067006001), The Bank of New York Mellon (account number 8900229047), The Royal Bank of Scotland NV (account number 574074872241), and Wells Fargo Bank NA (account number 2000191186239).

109.     Bank of China Limited maintains an interbank or other correspondent account, account number 7001-1000012-000-001, at the New York branch of Bank of China Limited, which is located at 410 Madison Avenue, New York, NY 10017.  Bank of China Limited also maintains interbank accounts at the New York branches of Bank of America NA (account number 6550690130), Citibank NA (account number 36004441), Deutsche Bank Trust Company Americas (account number 04-036-203), and JPMorgan Chase Bank National Association (account number 001-1-165206).

**The Continued Sale of Counterfeit Jerseys on the Website www.huayetrade.com**

110.     After PayPal restricted the jasonwholesale@gmail.com PayPal account on or about November 10, 2011, the website www.huayetrade.com continued to sell counterfeit sports jerseys.

111.     After the freezing of the jasonwholesale@gmail.com PayPal account, proceeds of the sale of counterfeit jerseys via the website www.huayetrade.com were deposited into a PayPal account in the name of yu3ying@gmail.com.

112.     The PayPal account in the name of yu3ying@gmail.com bears the account number XXXXXXXXXXXXXXXX2866.  PayPal account XXXXXXXXXXXXXXXX2866 hereinafter will be referred to as the "yu3ying@gmail.com PayPal account."

113.     The first transaction recorded in the yu3ying@gmail.com PayPal account took place on or about February 26, 2011.

114.     On December 19, 2011, the same SA who had placed the three prior under-cover orders for sports jerseys from the www.huayetrade.com website placed an order for an NFL New York Giants (#90 Pierre-Paul) jersey and an NFL Carolina Panthers (#1 Newton) jersey.  The SA followed the same procedure as he had on June 13, 2011, and August 31, 2011, when purchasing the two jerseys.

115.     On December 19, 2011, the SA received an email from amoyhy@188.com, titled "Unfinished Jersey order HY2260," verifying the purchase and directing the SA to pay for the purchase using a PayPal account in the name of yu3ying@gmail.com.  The email referenced Huaye International Trade Co., Ltd. and was signed by "Lin."

116.   On December 22, 2011, the SA made payment for $60.00 to the yu3ying@gmail.com PayPal account.  On the same date, the SA received a confirmation from PayPal that the payment was made.

117.   On December 22, 2011, the SA received an email from amoyhy@188.com acknowledging receipt of payment.

118.   On January 5, 2012, the SA retrieved the packages from the under-cover post office box in the District of Columbia, which contained the jerseys ordered from www.huayetrade.com on December 19, 2011.

119.   On or about January 11, 2012, a CAPS brand protection representative examined detailed digital photos of the two jerseys received from www.huayetrade.com with the purported registered trademarks from the New York Giants and the Carolina Panthers (both NFL teams).  The representative was trained and employed by Trademark Management, a company certified by numerous trademark holders, including the NFL, to identify counterfeit merchandise.  The representative informed HSI agents that the two sports jerseys received from www.huayetrade.com and paid for using the yu3ying@gmail.com PayPal account were counterfeit and were not manufactured by the rights holders or their designee.

120.   A review of PayPal records shows that a large number of the purchasers making payments to the PayPal account of yu3ying@gmail.com also had made payments to the jasonwholesale@gmail.com PayPal account  in a separate transaction.

121.   For example, of the 683 completed payments made to the yu3ying@gmail.com PayPal account during the period February 26, 2011, to December 29, 2011, 428 of those payments were from purchasers who also had made payments to the jasonwholesale@gmail.com PayPal

account. Thus, 62.66% of the payments into the yu3ying@gmail.com PayPal account were from customers who had made payments, at different times, to both the yu3ying@gmail.com and jasonwholesale@gmail.com PayPal accounts.

122.    Of the 428 purchasers who made payments to both the yu3ying@gmail.com and the jasonwholesale@gmail.com PayPal accounts, 26 had made 20 or more payments to the jasonwholesale@gmail.com PayPal account.  Of those 26, 24 began making payments to the yu3ying@gmail.com PayPal account only after the jasonwholesale@gmail.com PayPal account was frozen on or about November 10, 2011.

## COUNT I

1.    All statements and averments made in paragraphs 1–122 are re-alleged and incorporated, herein, by reference.

2.    The defendant properties are subject to forfeiture because they constitute or are derived from "any proceeds obtained directly or indirectly" as a result of the commission of the offense of trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1).

3.    As such, the defendant properties are subject to forfeiture pursuant to Title 18, United States Code, Section 2323(a)(1)(C).

*WHEREFORE*, the plaintiff United States of America prays that, as to the defendant properties, **All Funds In Industrial And Commercial Bank Of China Limited Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $718,943.68, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXX7-028, Held At Industrial And Commercial Bank Of China**

**Limited, Fujian Provincial Branch, Or Any Property Traceable Thereto; and All Funds In**

**Bank Of China Limited Interbank Accounts In The United States In An Amount Up To And**

**Including The Amount Of $107,940.23, Which Is Equivalent To The Value Of Proceeds Now**

**On Deposit In Account Number XXXXXXXXXXXXXXX7-338, Held At Bank Of China**

**Limited, Fujian Branch, Or Any Property Traceable Thereto**, due process and warrants of arrest

*in rem* issue according to law; that, pursuant to law, notice be provided to all interested parties to

appear and show cause why the forfeiture should not be decreed and the defendant properties be

condemned as forfeited to the United States of America; and for such other and further relief as this

Court may deem just, necessary and proper, together with the costs and disbursements of this action.


Respectfully submitted,

/s/ *Ronald C. Machen Jr.* /SLB
RONALD C. MACHEN JR., D.C. Bar No. 447889
United States Attorney

/s/ *Stephanie Lauren Brooker*
STEPHANIE LAUREN BROOKER, D.C. Bar No. 475321
Chief, Asset Forfeiture and Money Laundering Section
DIANE G. LUCAS, D.C. Bar No. 443610
Assistant United States Attorney
Asset Forfeiture and Money Laundering Section
JONATHAN P. HOOKS, D.C. Bar No. 468570
Assistant United States Attorney
Fraud and Public Corruption Section
KATHARINE A. WAGNER, N.Y. Bar No. 4798245
Special Assistant United States Attorney
Asset Forfeiture and Money Laundering Section
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 514-7912
Diane.Lucas@USDoj.Gov

/s/
_____
JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and Money Laundering Section
FREDERICK REYNOLDS
Deputy Chief
PAMELA J. HICKS
Senior Trial Attorney
Asset Forfeiture and Money Laundering Section
Criminal Division, U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-1263
Pamela.Hicks@USDoj.Gov

/s/
_____
THOMAS S. DOUGHERTY
Trial Attorney
Computer Crime and Intellectual Property Section
Criminal Division, U.S. Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-1026
Thomas.Dougherty@USDoj.Gov


Counsel for Plaintiff United States

## VERIFICATION

I, Satish Mathai, a Special Agent for the United States Immigration and Customs Enforcement, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the United States Immigration and Customs Enforcement.

I hereby verify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 21st day of March 2012.

_____
Satish Mathai
Special Agent
Immigration and Customs Enforcement

-29-